IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Harrisonburg Division

| | |
|---|---|
| TERESA D. NIXON, | ) |
|     Plaintiff, | ) |
| v. | ) |
| KYSELA PERE ET FILS, LTD. | ) |
|     Serve: Francis J. Kysela, V<br>           Officer of the Corporation<br>           331 Victory Rd.<br>           Winchester, VA 22602-0000 | ) Case No. 5:21-cv-00011 |
|     And | ) |
| FRANCIS J. KYSELA, V<br>319 Lake Serene<br>Winchester, VA 22603-0000 | ) |
|     Defendants. | ) |

## COMPLAINT

COMES NOW the Plaintiff, Teresa D. Nixon ("Ms. Nixon" or "Plaintiff"), by counsel, and hereby files her complaint for damages against the defendants, Kysela Pere et Fils, Ltd. ("Kysela Company" or "Company"), and Francis J. Kysela, V ("Mr. Kysela"). Together, Kysela Company and Mr. Kysela are referred to herein as "Kysela" or "Defendants." Nixon and Kysela are referred to herein as the "Parties."

In support of her Complaint, Plaintiff states as follows:

## NATURE OF THE CASE

1. Plaintiff brings this action against Defendants under Title VII of the Civil Rights Act of 1964 ("Title VII") for sexual harassment and retaliation, including retaliatory termination.

1

She brings related state law claims for breach of contract, gross negligence / willful and wanton conduct, intentional infliction of emotional distress, and for equitable relief.

## JURISDICTION AND VENUE

2. This Court has subject-matter jurisdiction over the federal law claims in this action pursuant to 28 U.S.C. § 1331 because the Complaint alleges violations under Title VII.

3. This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367 because the state law claims are "so related to the …. [federal claims] that they form part of the same case or controversy."

4. This Court has personal jurisdiction over the Defendants because they performed the acts complained of herein within this district.

5. On or about June 29, 2020, Plaintiff filed a Charge of Discrimination with the Washington Field Office of the Equal Employment Opportunity Commission (the "EEOC").

6. The EEOC issued Plaintiff a notification of her right-to-sue on or about January 25, 2021, which Plaintiff received shortly thereafter.

7. Venue is proper in this district and in this division by virtue of 28 U.S.C. §1391(b) because, among other reasons, a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this district.

## PARTIES

1. Plaintiff Teresa D. Nixon is a female resident of the Commonwealth of Virginia. She is a professional marketing executive who had a thirty-year successful career with a sales and marketing company.

2. Kysela Pere et Fils, Ltd is a corporation located at 331 Victory Rd., Winchester, VA 22602. The Company is one of the top specialty wine and spirit importers in the United States,

providing products both at premier and value pricing from over 200 wineries in thirteen countries. These products include fine wines, craft beers, hard cider, whiskey and other hand-crafted spirits, and sake.

3. Francis J. Kysela, V is the founder and sole owner of Kysela Pere et Fils, Ltd., and is a director and officer of the corporation, and is its registered agent.

4. For some of the time periods relevant to this action, Ms. Nixon was employed by Kysela Pere et Fils, Ltd. at its office location in Winchester, VA.

## FACTUAL BACKGROUND

5. In 2013, Ms. Nixon and Mr. Kysela engaged in a consensual, romantic relationship. At the time, Mr. Kysela was married and Ms. Nixon was legally separated.

6. The relationship between the parties became an "on again, off again" affair.

7. Mr. Kysela used a variety of plans, tactics, and schemes designed to pressure, compel, and hold Ms. Nixon in their sexual relationship.

Employment

8. In 2014 Mr. Kysela encouraged Ms. Nixon to set aside a successful 30-year career to work for the Kysela Company. She agreed.

9. Mr. Kysela's employment of Ms. Nixon would become his main vehicle to coerce her to continue her sexual relationship with him. In each of the instances outlined below, Mr. Kysela made decisions about Ms. Nixon's employment based on the status of the sexual relationship between the two.

10. On May 26, 2016 Mr. Kysela terminated Ms. Nixon's employment after another "off again" cycle in their sexual relationship.

11. In September 2016 he re-employed Ms. Nixon.

12. In May 2017 Mr. Kysela terminated Ms. Nixon's employment yet again. He drafted a separation agreement for Ms. Nixon but it was not finalized because Nixon resumed their sexual relationship.

13. In September 2017, Mr. Kysela "fired" Ms. Nixon yet again, but her employment never really ended.

14. In June 2018 Mr. Kysela downgraded Ms. Nixon's job responsibilities. Then he showed up at her house on July 3, 2018, climbed a ladder and entered through an open door while Ms. Nixon was in the shower, and convinced her to have sex with him.

15. In a November 1, 2018 email to Ms. Nixon that was part of an email string related to sex, Mr. Kysala said, "If you take care of me, I take care of you … that's how life works … you deny me and we have issues …"

16. In January 2019 Ms. Nixon resigned from Kysela Company and took new employment.

17. After Ms. Nixon's January 2019 resignation, Mr. Kysela convinced Ms. Nixon to remain part time with the Company and later to quit her other job.

18. On February 8, 2019 Mr. Kysela told Ms. Nixon "I wished we had lived together and you were my assistant for life."

19. On July 31, 2019 Mr. Kysela, on behalf of Kysela Company, signed yet another employment contract with Ms. Nixon (hereinafter "the Contract"). (A copy of the Contract is attached as Exhibit 1.)

20. Mr. Kysela offered Ms. Nixon the Contract in order to induce Ms. Nixon to stay in a sexual relationship with him and to have it as a tool to keep her in the relationship by tying her continued employment to meeting his sexual desires.

4

24. Under the Contract, the Company agreed to employ Ms. Nixon for a three-year term. Under Section 7 of that contract, the Company could only terminate Ms. Nixon's employment for one of four reasons:

(1) conduct evidencing substance abuse or dishonesty that affects its business interests,

(2) failure to meet sales goals,

(3) her breach of contract terms, or

(4) Kysela's dissatisfaction with job performance *if* the Company provides thirty day's written notice.

25. On August 4, 2019, Mr. Kysela agreed to Ms. Nixon's request / statement that their relationship would be business only. But he continued to pursue sex with her. Sometimes she gave in.

26. By September 27, 2019 Ms. Nixon was seeing a counselor and trying to get out of her sexual relationship with Mr. Kysela.

27. On September 29, 2019, Ms. Nixon again terminated her sexual relationship with Mr Kysela.

28. That same day, in response to Ms. Nixon's termination of the sexual relationship, Mr. Kysela, acting for the Kysela Company, fired her.

29. Mr. Kysela's termination of Ms. Nixon's employment did not meet any of the delineated reasons to support termination as listed in the Contract.

The BB&T Loan

30. In November 2017 Mr. Kysela developed a new scheme to enhance Ms. Nixon's dependence on him as a way of exerting control over her. Under his plan, Mr. Kysela and Ms. Nixon took out a $60,000 loan with BB&T bank. It was Mr. Kysela's credit that supported the

loan.  Mr. Kysela gave the money to Ms. Nixon, and they orally agreed she would make the payments to BB&T.  This oral agreement is referred to herein as "the BB&T Agreement."

31.     Alongside the BB&T Agreement, Mr. Kysela presented Ms. Nixon with an employment contract with Kysela Company to tie her employment to Kysela for five years or until refinancing of the debt.  Mr. Kysela's motivation was to hold Ms. Nixon in a sexual relationship with him during the pendency of the BB&T Agreement repayment by keeping her employed by him, where he could maximize his leverage over her.

32.     There is a little under $52,000 still owed on this debt to BB&T.

Ms. Nixon's Home

33.     In November 2013 Mr. Kysela developed a plan to give him control over Ms. Nixon in order to keep their (at the time still new) relationship in place.  He purchased Ms. Nixon's home and told Ms. Nixon to finalize her own divorce, and then buy her home back from Mr. Kysela when she was back on her feet again financially.

34.     Ms. Nixon agreed and she and her daughter continued to live in that home as renters.

35.     Over time Mr. Kysela used his ownership of the home as another way to continue to coerce sex from Ms. Nixon.

36.     On December 23, 2016 Ms. Nixon signed a contract to purchase a townhouse.  When Mr. Kysela found out, and realized that such a purchase would deprive him with one of his chosen means of control over Ms. Nixon, he threatened to fire her if she did not remain in the house that he now owned.

37.     In April 2017 he removed Ms. Nixon from a business trip in Europe because she went forward with purchasing the town house.

Illegal Prescription Drugs

38.	In February 2014 Mr. Kysela provided Ms. Nixon with what he said were sleeping pills.  In fact, the prescription was for Clonazepam, an addictive narcotic.

39.	Mr. Kysela acquired these pills through his own prescription.

40.	Mr. Kysela did not tell Ms. Nixon the pills were addictive and encouraged her to take them to help her sleep.

41.	Ms. Nixon complied, and became dependent upon them.

42.	On one occasion Mr. Kysela withheld pills from Ms. Nixon when she declined to accompany him on a business trip, where his intent for the trip was to engage in sexual activity with Ms. Nixon.

43.	After terminating Ms. Nixon's employment for the final time in September 2019, he mailed Ms. Nixon additional pills.

44.	These bills caused significant harm to Ms. Nixon, who lost sleep and suffered other damages and injuries from taking them.

45.	When that supply was finished, Mr. Kysela did not supply any further drugs.

46.	With the help of her medical provider, Ms. Nixon has stopped taking these pills and no longer has a medical, physical, or psychological need to do so.

47.	Mr. Kysela's intent in providing Ms. Nixon with the drugs initially, and then continuing to do so, was to induce Ms. Nixon's addiction and use such dependence as an additional means of controlling her, including controlling her sexual relationship with him.

Consequences of Mr. Kysela's actions

48.	Mr. Kysela is the sole owner of Kysela Company and all his actions were designed both to use his leverage as the company owner to achieve his personal sexual desires and to use

his personal leverage for his business needs. Kysela Company and Mr. Kysela were alter egos of each other in these regards.

49. Ms. Nixon suffered significant emotional harm as a result of Kysela's actions including use and dependence on narcotics, the pain of withdrawal from use, severe emotional distress, disruption of personal friendships and relationships, medical expenses, lost wages (past, present, and future), embarrassment, shame, humiliation, and loss of professional reputation.

50. Kysela's actions were intentional, severe, beyond the pale of actions acceptable to civilized society, and designed to give him control over Ms. Nixon and to cause physical and emotional harm. As such, these actions support an award of punitive damages against both Mr. Kysela and Kysela Company.

51. Ms. Nixon has incurred significant expense for attorneys' fees and litigation costs as a result of defendants' actions.

## COUNT I
### (Title VII – Hostile Work Environment)
### (Against Kysela Company Only)

52. Plaintiff restates and re-alleges the allegations contained in the preceding paragraphs of the Factual Background section as if fully set forth herein.

53. Mr. Kysela's tactics to pressure Ms. Nixon for sex, including threats of termination, reduction of job responsibilities and opportunities, and serial employment contracts designed as responses to changes in the Parties' sexual relationship, all served to create a hostile work

8

environment for Ms. Nixon, thereby affecting the conditions of her employment in a severe and pervasive manner.

54. As such, Kysela Company is liable for violation of Ms. Nixon's rights under Title VII.

55. As a result of Defendants' discrimination, Plaintiff suffered, and continues to suffer, severe emotional distress, disruption of personal friendships and relationships, medical expenses, lost wages (past, present, and future), embarrassment, shame, humiliation, loss of professional reputation, dependence on narcotics, the pain of withdrawal from drug use, loss of self-esteem, and heightened anxiety.

## COUNT II
### (Title VII – Retaliation and Hostile Work Environment - Termination of Employment)
### (Against Kysela Company Only)

56. Plaintiff restates and re-alleges the allegations contained in the preceding paragraphs of the Factual Background section as if fully set forth herein.

57. Plaintiff's employment with Kysela Company was terminated because she ended her sexual relationship with Mr. Kysela.

58. Tying employment to a sexual relationship creates a hostile work environment. Termination for ending such a relationship is wrongful under Title VII.

59. Terminating employment because Ms. Nixon ended the sexual relationship is retaliation for her opposition to discrimination.

60. Plaintiff suffered an adverse action subsequent to engaging in protected conduct (ending a sexual relationship) when Defendant terminated her.

61. As a result of Defendants' retaliation, Plaintiff suffered, and continues to suffer, severe emotional distress, disruption of personal friendships and relationships, medical expenses,

lost wages (past, present, and future), embarrassment, shame, humiliation, loss of professional reputation, dependence on narcotics, the pain of withdrawal from drug use, loss of self-esteem, and heightened anxiety.

## COUNT III
### (Breach of Contract)
### (Against Kysela Company Only)

62. Plaintiff restates and re-alleges the allegations contained in the preceding paragraphs of the Factual Background section as if fully set forth herein.

63. Plaintiff's Employment Contract of July 31, 2019 contained a finite list of enumerated reasons, which were the only reasons for which Ms. Nixon's employment could be terminated under the Contract.

64. None of the enumerated reasons in the Contract supported Ms. Nixon's termination.

65. In fact, Ms. Nixon was terminated because she ended her sexual relationship with Mr. Kysela.

66. Termination for that reason was not permitted by the terms of the Contract.

67. Plaintiff was entitled to three more years of employment under the Contract.

68. As such, Plaintiff was set to earn $330,000 in wages for the remainder of the Contract.

69. As a result of Defendant Kysela Company's breach of contract, Plaintiff incurred wage loss of $330,000, plus the value of employment benefits.

## COUNT IV
### (Gross Negligence / Willful and Wanton Conduct)
### (Against Both Mr. Kysela and Kysela Company)

70. Plaintiff restates and re-alleges the allegations contained in the preceding paragraphs of the Factual Background section as if fully set forth herein.

71. By using his own Clonazepam prescription to provide the drugs to Ms. Nixon, encouraging her to take them, and not telling her the drugs were addictive, Mr. Kysela caused Ms. Nixon to become dependent on the drugs and to need medical assistance to break the dependency.

72. Mr. Kysela's actions were grossly negligent, intentional, and/or done with willful and wanton disregard for Ms. Nixon's health and safety.

73. Mr. Kysela's conduct was egregious, beyond the pale, and beyond the bounds of decency for someone in civilized society.

74. Mr. Kysela's actions involved his supervisory authority as Mr. Nixon's employer, as well as his personal leverage as someone in a sexual relationship with Ms. Nixon. Such apparent use of supervisory authority establishes Kysela Company's *respondeat superior* liability for Mr. Kysela's actions.

75. Kysela's gross negligence and/or willful and wanton conduct caused considerable harm to Ms. Nixon's health and enjoyment of life.

76. Kysela's gross negligence and/or willful and wanton conduct caused wage loss and incurrence of medical expenses.

77. Kysela's actions were so grossly wrong, and outside the bounds of civil decency, as to support an award of punitive damages.

78. As a result of Kysela's gross negligence and/or willful and wanton conduct, Plaintiff suffered, and continues to suffer, severe emotional distress, disruption of personal friendships and relationships, medical expenses, lost wages (past, present, and future), embarrassment, shame, humiliation, loss of professional reputation, dependence on narcotics, the pain of withdrawal from drug use, loss of self-esteem, and heightened anxiety.

## COUNT V
### (Intentional Infliction of Emotional Distress)
### (Against Both Mr. Kysela and Kysela Company)

79. Plaintiff restates and re-alleges the allegations contained in the preceding paragraphs of the Factual Background section as if fully set forth herein.

80. Mr. Kysela recklessly and without regard for Ms. Nixon's health and safety provided her with narcotics, without informing her of the addictive qualities of the drugs.

81. Mr. Kysela, through the series of actions outlined above, used a combination of tactics to keep Ms. Nixon in his sexual orbit, that is, available to him for sex, through coercion, intimidation, providing illegal narcotics, economic abuse, emotional abuse, and other methods.

82. Mr. Kysela's actions involved his supervisory authority as Mr. Nixon's employer, as well as his personal leverage as someone in a sexual relationship with Ms. Nixon. Such apparent use of supervisory authority establishes Kysela Company's *respondeat superior* liability for Mr. Kysela's actions.

83. Kysela's actions were so grossly wrong, and outside the bounds of civil decency, as to support an award of punitive damages.

84. As a result of Mr. Kysela's actions, Plaintiff suffered, and continues to suffer, severe emotional distress, disruption of personal friendships and relationships, medical expenses, lost wages (past, present, and future), embarrassment, shame, humiliation, loss of professional reputation, dependence on narcotics, the pain of withdrawal from drug use, loss of self-esteem, and heightened anxiety.

## COUNT VI
### (Injunctive Relief – Declaration of Contract as Void as Against Public Policy)
### (Against Mr. Kysela Only)

85. Plaintiff restates and re-alleges the allegations contained in the preceding paragraphs of the Factual Background section as if fully set forth herein.

86. Mr. Kysela arranged the BB&T loan, with the accompanying BB&T Agreement for repayment, as a means of exercising economic control over Ms. Nixon in order to pursue sex with her.

87. Mr. Kysela procured the BB&T loan in order not just to provide Ms. Nixon with money, but more importantly, to encourage her to spend money she did not already have and to provide her with the obligation to repay money. The repayment obligation made it more difficult for Ms. Nixon to quit her job with Kysela Company. In that way, Mr. Kysela used the BB&T loan and Contract as a means to procure sex from Ms. Nixon.

88. Contracts for money in exchange for sex are against the public policy of the Commonwealth of Virginia.

89. As such, the Court should decline to enforce the BB&T Agreement (by which Ms. Nixon agreed with Mr. Kysela that Ms. Nixon would pay back the BB&T loan and that Ms. Nixon would pay back Mr. Kysela for any payments he made on the loan).

90. The Court should declare the BB&T Agreement void. This would leave both Mr. Kysela and Ms. Nixon as equal payors to BB&T, with no agreement between the two on payback.

91. Declaring this Agreement void would serve the public policy of the Commonwealth of Virginia by deterring parties from engaging in agreements designed to procure sex and would save the Courts from the stain of enforcement of contracts for illicit purposes.

## PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Teresa D. Nixon, demands judgment against the defendants, Kysela Pere et Fils, Ltd., and Francis J. Kysela, V, as follows:

(a) For violations of Title VII, lost wages (past, present, and future) against Kysela Pere et Fils in excess of $200,000 or in an amount to be proven at trial;

(b) $50,000.00, or such greater amount as may be awarded by the jury and permitted by statute, in compensatory damages against Kysela Pere et Fils for violations of Title VII:

(c) $50,000.00, or such greater amount as may be awarded by the jury and permitted by statute, in punitive damages against Kysela Pere et Fils for violations of Title VII;

(d) $330,000 for damages for breach of contract against Kysela Pere et Fils;

(e) $250,000 in damages for gross negligence and/or willful and wanton conduct against Francis J. Kysela, V and Kysela Pere et Fils, Ltd.;

(f) $250,000 in damages for Intentional Infliction of Emotional Distress against Francis J. Kysela, V and Kysela Pere et Fils, Ltd.;

(g) $350,000 in punitive damages against Francis J. Kysela, V and Kysela Pere et Fils, Ltd., arising out of gross negligence, willful and wanton conduct, and Intentional Infliction of Emotional Distress.

(h) An Order declaring Void the oral agreement between Francis J. Kysela and Teresa D. Nixon for Ms. Nixon to make all payments on the BB&T loan, and any associated agreement for Ms. Nixon to pay back to Mr. Kysela any payments he makes on the loan, as that agreement was an exchange of money for sex in violation of the public policy of the Commonwealth of Virginia;

(i) Plaintiff's attorneys' fees and court costs as provided by statute;

(j) Pre- and post-judgment interest; and

(k) All other further relief that this Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

/s/ *John C. Cook*
John C. Cook, VSB No. 38310
Philip C. Krone, VSB No. 87723
Cook Craig & Francuzenko, PLLC
3050 Chain Bridge Road, Suite 200
Fairfax, VA 22030
(T): (703) 865-7480
(F): (703) 434-3510
jcook@cookcraig.com
pkrone@cookcraig.com
*Counsel for Plaintiff*