UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| TERESA D. NIXON, | ) |
| | ) |
| Plaintiff, | ) Civil Action No. 5:21-cv-00011 |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| KYSELA PERE ET FILS, LTD., *et al.*, | ) By:   Hon. Thomas T. Cullen |
| | )          United States District Judge |
| Defendants. | ) |

After the court dismissed Plaintiff Theresa Nixon's hostile work environment claim for failure to state a claim, she filed a second amended complaint in an attempt to cure her pleading deficiencies. Defendants Francis J. Kysela, V ("Kysela") and Kysela Pere Et Fils, Ltd. (the "Company") (collectively, "Defendants") filed a second partial motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). Defendants seek dismissal of Nixon's hostile work environment claim against both Defendants and her gross negligence/willful and wanton conduct claim against the Company. Because Nixon's additional allegations fail to state a claim for hostile work environment and her allegations do not establish that *respondeat superior* applies to the gross negligence claim, the court will grant Defendants' motion.

## I. BACKGROUND[1]

Nixon's claims arise from a toxic personal relationship with her boss, Kysela, and her employment at the Company. Nixon alleges that what started as a consensual romantic

---

[1] The court fully recited Nixon's allegations in its May 18, 2021, memorandum opinion and incorporates them by reference here. (ECF No. 25.)

1

relationship with Kysela transformed into a manipulative scheme, perpetrated by Kysela, to use her employment with the Company to keep Nixon in a sexual relationship with him. Nixon originally brought a hostile work environment claim under Title VII of the Civil Rights Act of 1964 ("Title VII").

Relevant here, Defendants previously moved to dismiss Nixon's hostile work environment claim, as alleged in her first amended complaint. The court granted the motion in part and dismissed the claim, but granted Nixon leave to file a second amended complaint to cure her pleading deficiencies. Specifically, the court reasoned that "[w]hile Nixon's allegations unquestionably describe an unhealthy relationship between her and Kysela, Nixon never raises any allegations regarding her working environment, nor does she describe how the conduct negatively impacted her performance." (ECF No. 25 at 7.) In other words, the court dismissed Nixon's hostile work environment claim because she did not plead any allegations "*about* her job." (*Id.* (emphasis in original).) The court, however, held that Nixon stated a plausible claim for quid pro quo sexual harassment under Title VII, among other claims.

Nixon filed her second amended complaint on May 28, 2021. (Am. Compl. [ECF No. 28].) Nixon alleged four additional facts about her job and working environment:

- "Mr. Kysela at times singled Ms. Nixon out for criticism in front of other employees during sales staff meetings. For example, he would criticize Ms. Nixon for texting on her phone, even though others were texting and were not criticized." (Am. Compl. ¶ 25.)

- "On other occasions Mr. Kysela did not make a sales folder for Ms. Nixon for a planned sales meeting, even though others in the meeting were given a folder." (*Id.* ¶ 26.)

- "Mr. Kysela manufactured contrived criticisms of Ms. Nixon's performance. For example, he took accounts away from her which made her unable to meet the annual sales bonus structure. He then claimed she failed to meet quota." (*Id.* ¶ 27.)

- "On another occasion, Ms. Nixon was sexually harassed and sent an explicit photo by an employee. Mr. Kysela forced Ms. Nixon to sign a document saying she did not want to pursue a civil action. The person harassing her was a good friend of Mr. Kysela's son." (*Id.* ¶ 28.)

Defendants now move for partial dismissal of Nixon's second amended complaint under Rule 12(b)(6). (ECF No. 30.) Specifically, Defendants move to dismiss with prejudice the hostile work environment claim (Count I) as to both Defendants, and the gross negligence/willful and wanton conduct claim (Count IV) only against the Company. For the reasons stated below, the court will grant Defendants' partial motion to dismiss.

## II. MOTION TO DISMISS STANDARD

Motions to dismiss under Rule 12(b)(6) test the legal sufficiency of a complaint. *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). To survive a Rule 12(b)(6) motion, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). A claim is facially plausible when the plaintiff's allegations "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* While a complaint Nixons not need "detailed factual allegations," complaints merely offering "labels and conclusions," "naked assertion[s] devoid of 'further factual enhancement,'" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* (alteration in original) (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555, 557).

3

## II. ANALYSIS

**A.    Count I: Hostile Work Environment**

To establish a claim for a hostile work environment, a plaintiff must show: (1) that there was unwelcome conduct; (2) that the unwelcome conduct was based on her sex; (3) that the unwelcome conduct was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive atmosphere; and (4) that the conduct is imputable to the employer. *Walker v. Mod-U-Kraf Homes, LLC*, 775 F.3d 202, 207–08 (4th Cir. 2014).

The third element—regarding the severity and pervasiveness of the unwelcome conduct—has both objective and subjective elements. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21–22 (1993). In considering whether a workplace is objectively hostile, it is necessary to consider "all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Anderson v. G.D.C., Inc.*, 281 F.3d 452, 459 (4th Cir. 2002) (cleaned up). Plaintiffs must "clear a high bar in order to satisfy the severe or pervasive test." *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008). As such, a plaintiff must show that the work environment "was pervaded with discriminatory conduct aimed to humiliate, ridicule, or intimidate, thereby creating an abusive atmosphere." *EEOC v. Central Wholesalers, Inc.*, 573 F.3d 167, 176 (4th Cir. 2009) (cleaned up)

Seeking to bolster her hostile work environment claim, Nixon now alleges that Kysela: (1) singled her out for criticism in front of other employees; (2) embarrassed her in sales meetings by not giving her a "sales folder" like everyone else; (3) manufactured contrived criticisms of her job performance; and (4) forced her to sign a document precluding her from

filing a civil action against another employee who allegedly sent her an explicit photograph. (Am. Compl. ¶¶ 25–28.) Defendants argue that the second amended complaint, even with the additional allegations, does not state a claim for hostile work environment. In her briefing and at oral argument, Nixon argues that Kysela's conduct *within their relationship*, taken as a whole, constitutes severe and pervasive conduct sufficient to state a plausible claim for hostile work environment.[2] Defendants have the better argument.

Nixon's allegations simply do not constitute behavior sever enough to state a Title VII claim for hostile work environment. Nixon undoubtedly alleges that she was subjected to rude, unsavory, and even petty behavior. But her supplemental allegations are *solely* premised on Kysela's rude treatment and callous behavior. It is well-settled that such allegations are not actionable under Title VII. *See Baqir v. Principi*, 434 F.3d 733, 747 (4th Cir. 2006) ("'[The plaintiff] merely complains of rude treatment by [his colleagues]—conduct falling short of that required to sustain a hostile work environment claim."); *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (holding that the plaintiff did not state a hostile work environment claim despite allegations of "callous behavior by her superiors").

Nixon also does not allege that unwanted conduct was pervasive. She does not allege that she faced discriminatory or unwanted conduct based on her sex on a regular basis. *Cf.*

---

[2] Because the court previously rejected Nixon's hostile work environment claim based on the "whole relationship" theory—and found that Nixon's claim failed because she did not allege any facts about her actual work environment—the court must now examine the supplemental allegations within the context of the second amended complaint to see if Nixon states a viable claim. At this juncture, Nixon continues to base her hostile work environment claim on the "whole relationship" theory of liability, and does not argue that the supplemental allegations, on their own, save the claim. As such, even Nixon implicitly recognizes that these additional allegations are not sufficient to save her claim. While the court has examined the entire second amended complaint, the supplemental allegations are the only allegations about her actual working environment, and they are therefore the relevant allegations for this motion to dismiss.

5

*EEOC v. R&R Ventures*, 244 F.3d 334, 339 (4th Cir. 2001) (manager sexually harassed the plaintiff "every single day"); *Ocheltree v. Scollon Prods., Inc.*, 335 F.3d 325, 333 (4th Cir. 2003) ("[The plaintiff] was subjected every day to some variety of this offensive conduct, which was humiliating to her personally and to women in general."). Rather, Nixon alleges only a handful of isolated incidents of bad behavior over the span of her approximately 5–6 year tenure with the Company. As such, Nixon's allegations do not describe a work environment consumed by targeted, offensive, or humiliating conduct, and she fails to state a claim for hostile work environment.

In sum, even with the additional allegations, the second amended complaint does not state a claim for hostile work environment because Nixon does not sufficiently allege that the unsavory *conditions* of her *job*—rather than her *relationship*—were so severe and pervasive as to change the conditions of her employment. The court will therefore dismiss Count I with prejudice.

**B.     Count IV: Vicarious Liability**

Defendants assert that Nixon fails to state a gross negligence/willful and wanton conduct claim against the Company because the second amended complaint does not contain allegations that Kysela acted within the scope of his employment when he allegedly shared his prescription medication with Nixon. The court agrees.

In Virginia, "an employer is liable for the tortious acts of its employee if the employee was performing his employer's business and acting within the scope of his employment when the tortious acts were committed." *Garnett v. Remedi Seniorcare of Va., LLC*, 892 F.3d 140, 145 (4th Cir. 2018). "[A]n act is within the scope of the employment if (1) it was expressly or

impliedly directed by the employer, or is naturally incident to the business[;] and (2) it was performed, although mistakenly or ill-advisedly, within the intent to further the employer's interest." *Kensington Assocs. v. West*, 362 S.E.2d 900, 901 (Va. 1987).

In cases where courts have held employers vicariously liable,[3] "the [employee's] tortious act . . . occurred *while* the employee was in fact performing a *specific job-related service* for the employer, and, but for the employee's wrongdoing, the service would otherwise have been within the authorized scope of his employment." *Parker v. Carilion Clinic*, 819 S.E.2d 809, 820 (Va. 218) (emphases in original). In contrast, *respondeat superior* liability does not apply in cases involving an employee's "purely personal acts . . . not within the scope of employment," arising "wholly from some external, independent, and personal motive [of the employee]." *Id.* at 820–21 (citation omitted).[4]

Nixon argues that Kysela utilized his supervisory authority and personal leverage in giving Nixon prescription medication, which created an "inseparably intertwined" relationship between Nixon, Kysela, and the Company. (ECF No. 31 at 5.) Nixon also points to her sole allegation that, "[o]n one occasion[,] Mr. Kysela withheld pills from [Nixon] when she declined to accompany him on a business trip, where his intent for the trip was to engage in sexual activity with [Nixon]." (Am. Compl. ¶ 52.) Even assuming Nixon's allegations are true, she

---

[3] *See e.g.*, *Brittingham v. United States*, 972 F. Supp. 1014, 1018 (E.D. Va. 1997) (because the service of disciplining an employee is within the ordinary course of the business and the employer's supervisory role, a supervisor's alleged assault of an employee was within the scope of his duties); *Majorana v. Crown Cent. Petroleum Corp.*, 539 S.E.2d 426, 429 (Va. 2000) (employee committed a tortious act within the scope of his employment when he assaulted the plaintiff during a sales transaction).

[4] *See e.g.*, *Jones v. Tyson Foods, Inc.*, 378 F. Supp. 2d 705, 714 (E.D. Va. 2004) (supervisor's acts were not within the scope of him employment because he "was not engaged in his workplace duties or functions when he asked [his employee] on a date, attempted to kiss her, and touched her inappropriately."), *aff'd* 126 F. App'x 106 (4th Cir. 2005).

has not stated a claim against the Company for purposes of vicarious liability. First, Nixon's allegations encompass Kysela's purely personal acts, which do not fall within the scope of his employment at the Company. There is nothing alleged to support any inference that Nixon's presence on the business trip was related to the Company rather than to Kysela's alleged personal, prurient motive. Second, Nixon does not allege that Kysela gave her the Clonazepam pills in performing a "specific job-related service." *See Parker*, 819 S.E.2d at 820. The court will therefore dismiss Count VI against the Company.[5]

### IV. CONCLUSION

For the reasons stated above, the court will grant Defendants' partial motion to dismiss (ECF No. 30). Specifically, the court will dismiss Count I (hostile work environment) as to both Defendants and Count IV (gross negligence/willful and wanton conduct) as to the Company. Count IV will proceed against Kysela individually. A separate order will issue.

The Clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 19th day of August, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE

---

[5] At oral argument, Nixon's counsel argued for the first time that Defendants' argument was premature because vicarious liability is a question of fact for the jury. But district courts routinely evaluate whether a plaintiff has stated a claim for vicarious liability at the motion-to-dismiss phase. For example, in *Garnett*, the Fourth Circuit affirmed the district court's dismissal on a Rule 12(b)(6) motion and held that the plaintiff did not state a claim against the employer for vicarious liability. *Garnett*, 892 F.3d at 146 ("In short, the conclusory language in the complaint does not even begin to establish vicarious liability. . . And the district court was right to dismiss it and to deny further leave to amend."); *see also Brittingham*, 972 F. Supp. at 1018 (evaluating vicarious liability on a motion to dismiss); *Jones*, 378 F. Supp. 2d at 714 (granting a motion to dismiss because the plaintiff "failed to allege facts sufficient to establish a case of *respondeat superior* liability").

8