CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
May 08, 2025
LAURA A. AUSTIN, CLERK
BY: s/ D. AUDIA
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | |
|---|---|
| Teresa D. Nixon, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 5:21-cv-00011 |
| Kysela Pere Et Fils, Ltd., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

This matter is before the court on two motions *in limine* filed by Defendant Kysela Pere Et Fils, Ltd. ("KPF") (Dkts. 103 and 104). KPF seeks to preclude Plaintiff Teresa D. Nixon from introducing evidence regarding the cause of a hand injury Nixon suffered in 2016, as well as evidence about the net worth, income, and financial status of Francis J. Kysela, V ("Kysela"), KPF's owner. For the reasons stated below, the court will grant KPF's motions.

### I.   Background

This case arises from a volatile workplace romance between Nixon and Kysela.[1] In 2019, Nixon lost her job as a sales representative for KPF shortly after she says she ended her romantic relationship with Kysela. She then filed this lawsuit alleging several causes of action against and KPF and Kysela. Two of her claims against KPF remain and are now proceeding to trial: (1) a claim alleging *quid pro quo* sexual harassment in violation of Title VII of the Civil

---

[1] The underlying facts are summarized in more detail in the Fourth Circuit's recent opinion in this case. *See Nixon v. Kysela Pere et Fils, Ltd.*, No. 22-1406, 2024 WL 3666166, at *1–3 (4th Cir. Aug. 6, 2024).

Rights Act of 1964, and (2) a claim alleging that Nixon's 2019 termination breached the terms of her employment agreement with KPF. Trial is scheduled to begin on June 16, 2025.

KPF filed two motions in *limine* on April 4, 2025. The first seeks to exclude anticipated evidence regarding the cause of a hand injury Nixon suffered in March 2016. (Dkt. 103.) The injury occurred when Kysela accidentally closed a door on Nixon's hand during an argument. KPF argues that the cause of the injury is irrelevant to Nixon's claims and, in the alternative, that its probative value is substantially outweighed by the danger of unfair prejudice to KPF. (*Id.*) KPF's second motion *in limine* asks the court to preclude Nixon from introducing evidence of Kysela's net worth, income, and financial status on the same two grounds. (Dkt. 104.) Nixon has filed responses opposing the two motions *in limine*, (Dkts. 106, 107, 109), and KPF has replied, (Dkts. 111, 112).

## II.     Standard of Review

A motion *in limine* allows the trial court to rule on the admissibility of anticipated evidence prior to trial. *Luce v. United States*, 469 U.S. 38, 40 n.2, 41 n.4 (1984). The trial court should exclude evidence on a motion *in limine* only when the evidence "is clearly inadmissible on all potential grounds." *United States v. Dumire*, No. 7:15-cr-00098, 2016 WL 4507390, at *3 (W.D. Va. Aug. 26, 2016) (quoting *United States v. Verges*, No. 1:13-cr-222, 2014 WL 559573, at *3 (E.D. Va. Feb. 12, 2014)). Alternatively, the court may reserve judgment on a motion *in limine* until trial "so that the disputed evidence is placed in the appropriate factual context." *Id.* (quoting *Verges*, 2014 WL 559573, at *3). When the court does resolve a motion *in limine* before trial, its decision "is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [factual] proffer." *Luce*, 469 U.S. at 41.

"[E]ven if nothing unexpected happens at trial, the district judge is free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling." *Id.* at 41–42.

### III. Analysis

#### A. Applicable Rules of Evidence

KPF's motions *in limine* rely on Federal Rules of Evidence 401, 402, and 403. Rules 401 and 402 address relevance. Courts begin evidentiary analyses with the idea that all relevant evidence is admissible unless prohibited by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. Irrelevant evidence, on the other hand, is not admissible. *Id.* Rule 401 defines relevant evidence as that which "has any tendency to make a fact [of consequence to the determination of the action] more or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 401's "basic standard of relevance thus is a liberal one." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993).

Rule 403 establishes certain limitations on the admissibility of relevant evidence. It provides that the trial court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. "Unfair prejudice" refers to "an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." Fed. R. Evid. 403 advisory committee's notes to 1972 proposed rules. "Evidence is unfairly prejudicial and thus should be excluded under Rule 403 when there is a genuine risk that the emotions of a jury will be excited to irrational behavior, and this risk is disproportionate to the

probative value of the offered evidence." *United States v. Williams*, 445 F.3d 724, 730 (4th Cir. 2006) (cleaned up).

### B. Evidence Regarding the Cause of Nixon's 2016 Hand Injury

KPF first seeks to preclude Nixon from introducing evidence regarding the cause of a hand injury she suffered in March 2016. According to Nixon, the injury occurred at Kysela's house during a KPF company function. (Dkt. 106 at 1.) Nixon asserts that Kysela "berated her privately" during the event and, as she sought to leave the house, closed a door on her hand. (*Id.* at 1–2.) The incident caused significant injuries that required medical treatment and surgery. (*Id.* at 2.) The parties agree that Kysela did not intend to injure Nixon, but Nixon argues that Kysela "was trying to close the door to prevent her from leaving" and, in so doing, was "exerting his authority" over her. (Dkt. 109 at 1.)

Nixon argues that this evidence is relevant because in August 2019, shortly before KPF terminated her employment, she took medical leave for surgery to address continued problems with one of the injured fingers and then was on "light duty" for two months. (Dkt. 106 at 2.) She maintains that those facts support her argument that KPF's justification for firing her—poor job performance—was pretextual. (*Id.*) KPF agrees that the fact Nixon suffered a hand injury is relevant to her claims insofar as the injury affected her ability to work for KPF. (Dkt. 108-3 at 2.) But KPF contends that the *cause* of Nixon's March 2016 hand injury is irrelevant and would unfairly prejudice KPF at trial by improperly suggesting that Kysela intended to harm Nixon, engendering hostility against Kysela, and insinuating that Kysela or KPF would be likely to engage in other wrongful conduct. (*Id.* at 2–3.)

Based on the parties' representations and the facts currently available, the court concludes that the anticipated evidence regarding the cause of Nixon's 2016 hand injury is inadmissible. Nixon does not identify any relevant purpose this evidence would serve at trial. Her claim for *quid pro quo* sexual harassment requires proof that "(1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; (4) her 'reaction to the harassment affected tangible aspects of [her] compensation, terms, conditions, or privileges of employment'; and (5) the employer knew or should have known of the harassment but failed to take remedial action." *Nixon*, 2024 WL 3666166, at *5 (quoting *Okoli v. City of Balt.*, 648 F.3d 216, 222 (4th Cir. 2011)) (emphasis removed). The fact that Kysela accidentally injured Nixon's hand during a March 2016 argument does not appear to have any bearing on that claim, which arises from alleged sexual advances and an employment decision that occurred in the summer and fall of 2019. There is no indication, for instance, that the 2016 incident occurred after Nixon rejected a sexual advance from Kysela. Nor does this evidence appear to have any relevance to Nixon's breach-of-contract claim, which turns on whether KPF terminated her employment for reasons not permitted under her employment agreement.[2]

Even if the fact that Kysela caused Nixon's hand injury has some minimal probative value, any such value is substantially outweighed by the risk of unfair prejudice to KPF. The evidence would serve little purpose other than to depict Kysela as impulsive and potentially physically violent towards Nixon, creating a risk that jurors would view him unfairly—and, by

---

[2] Nixon also asserts that Kysela was aware the hand injury was the reason she took medical leave in August 2019. (Dkt. 109 at 2.) That fact, she argues, further demonstrates KPF's justifications for terminating her employment were pretextual. (*Id.*) Kysela and other KPF representatives' knowledge of Nixon's hand injury is relevant to her claims, and KPF does not appear to suggest it should be excluded. (*See* Dkt. 111 at 1–2.)

extension, KPF—in a negative light.  That could result in a verdict based on improper, emotional considerations.

Accordingly, the court will grant KPF's motion *in limine* to exclude evidence that Kysela caused Nixon's March 2016 injury by closing the door on her hand.

### C. Evidence of Kysela's Net Worth, Income, and Financial Status

KPF next asks the court to prevent Nixon from introducing evidence of Kysela's net worth, income, and financial status on the grounds that it is either irrelevant or unfairly prejudicial, confusing, and misleading.

The court concludes that this anticipated evidence is inadmissible.  It is difficult to see how this evidence is relevant to Nixon's *quid pro quo* sexual harassment claim, which turns largely on whether Nixon was subjected to unwanted harassment based on sex prior to her termination, or her breach-of-contract claim, which turns on whether KPF terminated Nixon for reasons not authorized by her employment agreement.  Nor are Kysela's finances relevant to Nixon's request for punitive damages under Title VII.  While Nixon seeks to recover punitive damages from *KPF*, the corporation that employed her, Kysela himself is no longer a party to this action.

Even assuming Kysela's financial status may have some limited probative value, that value is substantially outweighed by the risk that it would unfairly prejudice KPF or confuse the jury.  Even when a company or individual is a party to a case, evidence of their financial well-being may, by invoking wealth-based bias, improperly appeal to the emotions of a jury.  *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 417 (2003); *McKiver v. Murphy-Brown, LLC*, 980 F.3d 937, 975 (4th Cir. 2020); *United States v. Bradley*, 644 F.3d 1213, 1271

(11th Cir. 2011). Because Kysela owns KPF, there is also a real danger that evidence of his financial condition "may confuse and prejudice a jury attempting to determine [KPF's] liability and compensatory damages." *Kovari v. Brevard Extraditions, LLC*, No. 5:18-cv-00070, 2019 WL 8348612, at *2 (W.D. Va. May 20, 2019).

Accordingly, the court will grant KPF's motion *in limine* to preclude evidence of Kysela's net worth, income, and financial status.

## IV. Conclusion and Order

For the foregoing reasons, KPF's motions *in limine* (Dkts. 103 and 104) are **GRANTED**. If any new or additional evidence is introduced at trial that has bearing on the court's analysis of these motions, the court reserves its right to revisit its ruling.

**IT IS SO ORDERED.**

**ENTERED** this __8th__ day of May, 2025.

HON. JASMINE H. YOON
UNITED STATES DISTRICT JUDGE